of; and that the facts, as they appeared in evidence, should be stated. as also ought the continuance of the guarantee. He referred to *Esp. Dig.* 140, and 2 *Went. Plead.* 555. That there was no averment in the declaration that *Rids-dale* and *Beaumont*, to whom the letter was addressed, and the plaintiffs, were the same persons.

*Harper*, for the Appellees, admitted that some of the objections to the declaration were well founded; and that if any one of the counts were defective, it would be fatal, if it was not cured by the verdict, which he insisted would aid the defects urged. That if there was one good count, the verdict being general, it was sufficient; and if the evidence supported any one good count, it was sufficient. That the *second count* was a good one, to which the evidence would apply. He also contended that the letter was an absolute continuing guarantee, until it should be countermanded.

*Martin*, in reply, insisted, that where the evidence was not stated, and any one of the counts in the declaration was defective, there was some reason to suppose there was evidence applicable to such defective count; but that if the evidence was set out, and there was any one count to which it did not apply, it was fatal.

*Curia adv. vult.*

THE COURT at this term concurred with the General Court in the opinion pronounced in the bill of exceptions, but *reversed* the judgment because of a defective count in the declaration.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

───────

DE SOBRY, *Ex'r. of* TERRIER DE LAISTRE, *vs.* TERRIER DE LAISTRE.

ERROR to the General Court. The defendant in error, *Lewis Augustine Terrier de Laistre*, brought an action of

1807.

De Sobry
vs
De Laistre

December.

Parol evidence admitted to prove the manner in which wills are made and proved in *France*. A copy of a will executed in *Philadelphia* and transmitted to the Island of *Martinique* by the testator, certified by a notary public of that Island, and returned under a commission issued to take testimony, is sufficiently authenticated by having the certificate of the chief colonial officer as to the signature of the notary public; and which, with the testimony of the testamentary executor, returned under the commission, is sufficiently proved, and may be read in evidence as the will of the deceased. As to the manner of striking commissioners and issuing commissions to a foreign country to take testimony

1807.

De. Sobry
vs
De Laistre

*assumpsit* against *Benjamin de Sobry*, executor of *Michael Terrier de Laistre*, (now plaintiff in error.) The declaration contained four counts: The *first* for £4518 17 7 current money, for sundry matters, properly chargeable in an account. The *second* for money had and received. The *third* for money laid out, expended and paid; and the *fourth* for money lent and delivered. The defendant pleaded *non assumpsit* and *plene administravit;* to which the general issues were joined.

Proof of the *French* laws in testamentary affairs, returned under commissions issued to take testimony, and admitted in evidence

How far the proceedings in a court in a foreign country is legally authenticated; and how far the exemplification thereof produced contain the whole proceedings, &c.

The mere showing the seal of a court of our own state in another court of the state, is a sufficient authentication of the judgment of the court it purports to certify

The seal of the court of a foreign country does not prove itself; but it must be proved by testimony Parol evidence admitted to prove the seal of the court of a foreign country

Where a question comes incidently or collaterally before the court, whether or not the same strictness in the admission of evidence, is to be observed as if the question was directly in issue?

The laws of a foreign country are to be proved by evidence, and the court are to decide what is proper evidence of such laws, and to construe them, and judge of their applicability to the question before the court

The letters of a witness permitted to be read in evidence to impeach his credit as to what he had sworn upon his examination taken under a commission, contradictory to the contents of the letters, but not to prove any other fact

If a contract is in writing it will itself show where it is to be executed; but if it does not appear on the face of it, the presumption is that it is to be executed in the country where it was made. If it does appear that it has a view to be executed in a particular country, it must be carried into effect pursuant to the laws of that country

If a contract is by parol, the party is at liberty to go into evidence to prove the intention of the parties as to where it was to be executed

A contract made in a foreign country must be governed by the laws of that country, and no acknowledgment of the debt in another country can change the original nature of the debt

If the plaintiff in an action of *assumpsit* files an account in court containing the items of his claim against the defendant; he is precluded from going into evidence to establish his claim in a manner different from that he had elected by his account to consider the defendant his debtor.

Any creditor may sue an executor *pro forma*, provided he shows himself to be a creditor under the laws of the country where the contract was made; and as long as assets remain in the hands of such executor, he is answerable to the creditors; and if there is any surplus, it is to go into the mass of the succession, to be distributed according to the laws of the country where the testator was domiciled

Personal property adheres to the person; and wherever the testator is domicil at the time of his death, the property is to be distributed according to the laws of that country

Whatever fund in this state is answerable for debt, is answerable to all creditors alike according to the laws of the state

If the laws of this state give a preference to its citizens in the payment of the debts of a deceased, the defendant, if sued by a foreign creditor, must plead such preference

An executor *pro forma* is accountable to the testamentary executor only for the surplus remaining after payment of debts

If an heir pure and simple, heir with benefit of inventory, or beneficiary heir, has not intermeddled with the estate or succession of a person dying in *France*, so as to prevent his recovery as such under the laws of *France*, he can recover in the courts of this state on a contract made in *France*

Whether or not his having intermeddled would lessen his right of recovery?

It is a general principle, which admits of few exceptions, that in construing contracts made in a foreign country, the courts are governed by the *lex loci* as to what respects the essence of the contract; that is, the rights acquired and the obligations created by it; and the remedy or mode of enforcing it is to be conformable to the laws of the country where the action is instituted

Where by the terms of a contract it is to be executed in another country, there the parties to it by common consent adopt the laws of that country as the rule of decision

Where a contract is *contra bonos mores*, as for he price of prostitution, such a contract, though legal in some countries would not be enforced in this state

Unless the jury are satisfied according to the laws of *France*, that a co-heir with benefit of inventory, who is also a creditor; cannot recover in the quality of creditor, without renouncing; then such co-heir is entitled to recover as a creditor whatever the jury may find due on a contract made in *France*, according to the laws of *France*

If a contract is made in this state between foreigners, and the debtor dies in a foreign country, the creditor may recover in the courts of this state, according to the laws of this state

No part of the personal estate of a testator dying in *France*, is subject to distribution among his coheirs, but the surplus or residuum remaining after the payment of all his debts and legacies; and a debt due to one of the co-heirs is as much entitled to payment as a debt due to a stranger, unless there is proof that there is a law of *France* which extinguishes the right or claim of the co heir creditor with benefit of inventory, if he does not renounce as co-heir

The laws of *France* are matters of fact to be found by the jury upon evidence to be produced to them, and unless they find some law of *France* which extinguishes the claim or right of recovery of the plaintiff (being co-heir and creditor) he has a right to recover; and the court directed the jury that it did not appear to the court that there was any law of *France*, which was a legal impediment to the plaintiff's recovery

A contract made in one country with a view to the execution or performance of it in another country, is governed in all things both as to its essence and the mode of enforcing it, by the laws of the latter country

1. In the course of the trial at October term 1804, the defendant in the court below, offered to read in evidence the testimony returned, with a commission, which he obtained at May term 1800, and which issued on the 22d of July following, to the Island of *Martinique.* This testimony was copies of the will, and several codicils, made by the defendant's testator, and certain interrogatories and answers thereto by the testamentary executor, which being extracted and translated, are as follow, viz. "Mr. *Lewis Augustin Terrier de Laistre,* having produced, as a witness, *Mr. Dominick Pechier,* merchant, dwelling in the parish of the Fort of the city of *St. Pierre,* testamentary executor of the said Mr. *Michael Augustin Terrier de Laistre,* as appointed by his will, deposited in the hands of Messrs. *D. Le Blanc* and *Ciceron,* royal notaries public of this island, the 14th of April 1797, we have administered oath to the said testamentary executor, and have interrogated him in the following manner: *Inter.* Do you know whether the said Mr. *Michael Augustin Terrier de Laistre* has put into writing his testament and last will? *Ans.* Yes. He made an olograph will, of a copy of which I was the depositary in my quality of testamentary executor. To which said olograph will is annexed a codicil, likewise olograph. *Inter.* Can you say where and when the said will was made? *Ans.* The said will bears date, *Philadelphia* 1st April, 1795, and the codicil thereto annexed, bears date *Philadelphia,* the 29th of June, 1796." "And an attested copy of the said will, and codicil thereto annexed, of the said *Michael Augustin Terrier de Laistre,* and which we have hereunto annexed, having been produced and read to the deponent, we interrogated him as follows: *Inter.* Does the paper, which has just been showed to you, express the last will and testament of the said *Michael Augustin Terrier de Laistre,* to the best of your knowledge and belief? Declare all that you know, have heard, or believe. *Ans.* I know the said paper to be the last will and testament of the said *Michael Augustin Terrier de Laistre. Inter.* Do you know whether the said *Michael Augustin Terrier de Laistre,* made in his life-time any other codicils in writing? *Ans.* I declare that he made three others, of which I was likewise the depositary in my quality of testamentary executor; the first, bearing date *St. Pierre, Martinique,* the 14th of April 1797, received by Messrs. *D. Le Blanc* and

1807.

De Sobry
vs
De Laistre

*Ciceron*, royal notaries of this island; and a supplement of the same day and year, signed by Messrs. *Bonifaye* and *Ciceron*; the second, *St. Pierre, Martinique*, the 25th of April of the same year, received by Messrs. *Ciceron* and *Wanter*, royal notaries of this island; and the third, *St. Pierre, Martinique*, the 10th July 1797, nine days before his death, received by Messrs. *Ciceron* and *Therry*, royal notaries of this island.

"And a legally attested copy of these three codicils hereto annexed, being produced and read to the said deponent, we interrogated him as follows: *Inter.* Are the papers now shown to you the last codicils, and do they express the last intentions of the said *Michael Augustin Terrier de Laistre? Ans.* I declare that the said papers are truly the last codicils and last intentions of the said deceased." Annexed to copies of the said will and codicils, as returned with the commission, are the following certificates, to wit:
"Collated,    *Ciceron.*

"We, *John Augustin Regnaudier*, commissioner of the King, and *procureur*, (attorney,) holding for this purpose the place in the absence of Mr. *John Aman Astory*, commissioner of the King, titular senichal of *St. Pierre, Martinique*, certify to all whom it may concern, that the above signature is that of Mr. *Ciceron*, notary, dwelling in this island, and that faith ought to be given to it as well in courts of justice as thereout, and to all that he signs in that quality. In testimony whereof we have signed these presents, and thereto fixed the seal of this colony, where stamped paper is not in use. Given in our hotel at *St. Pierre, Martinique*, the 20th July 1801.    *Regnaudier.*

[L. S.] Sealed at *St. Pierre, Martinique* the 20th July 1821.    *Jacquier.*"

The plaintiff objected to these copies being read in evidence, because they were not legally proved and certified.

*Martin,* (Attorney General,) and *Purviance*, for the Defendant, stated, that by the laws of *France* there were two modes of making wills—one was a will entirely in the hand writing of the testator, which was called an *Olograph Will*; the other one written by a notary public, agreeably to the directions of the testator; and that when written and read to the testator, and by him signed, and also signed by the notary, it was a good will, and was call-

1807.

De Sobry
vs
De Laistre

ed a *Solemn Will.* The will offered in evidence was an *olograph will*, executed in *Philadelphia* by the testator, and by him transmitted to certain notaries public in *Martinique*, where it remained. The commission, which issued in this case, was to ascertain if there was a will, and to have a copy exhibited and proved by the executor named in the will. It was legally authenticated, according to the act of 1785, *ch.* 46. The original will could not be produced, having been lodged in the office of a notary by the testator himself, but the copy was authenticated by the notary in the manner directed by the laws of *France.*

*Harper* and *Boyd*, for the Plaintiff, contended, that it was a fixed principle in the law of evidence, that a will must be proved in one of three ways—1. The original must be produced, and the execution proved. 2. An authenticated copy from an office of record, properly certified. 3. If an authenticated copy is not produced, then proof that it is a true copy from the original, if the original is in the possession of a person or officer not authorised to record it. They cited *Peake's Evid.* 48, *(notes.)* 73, *(notes.) Anon.* 9 *Mod.* 66. *Henry vs. Adey*, 3 *East*, 221. *Moises vs. Thornton*, 8 *T. R.* 303; and *Stevenson vs. Myers*, 1 *Harr. & Johns.* 102.

CHASE, Ch. J. The court are of opinion, that the certificate of the colonial officer of the signature of the notary public, is sufficient to authenticate the copy of the will, and that the same is sufficiently proved, and may be read in evidence to the jury.

2. The defendant also offered to read in evidence the commissions which issued in June 1803, to *Paris, Martinique* and *Bourdeaux*, and the returns of those commissions made at May term 1804; but which were objected to by the plaintiff, because the commissions had not been regularly issued. The facts were, that on the docket of the court at May term 1803, the entry is "commissions are ordered by consent, on the part of the defendant, to *Paris, Martinique* and *Bourdeaux*, on striking commissioners; if the commissions are not returned at the next term, it will then be no cause of continuance." "The defendant's commissioners

struck the 18th June 1803, (Saturday.) See their names mentioned in a paper filed." On that paper, in the hand-writing of the attorney general, (one of the attorneys for the defendant,) after naming four persons as commission-ers to each place, is as follows: "An order for commissions to our commissioners, unless plaintiff strikes commission-ers on Monday," (the 20th June.) There was no order made in the docket or in the minutes of the court. The court met on Monday the 20th June for the purpose of making some few entries. The jury had been discharged on Saturday the 18th June. The plaintiff, and his coun-sel, and the counsel of the defendant, left the court for *Baltimore* on Saturday. The defendant remained, and on Monday the 20th June, he obtained his commissions from the clerk. Neither the plaintiff, nor his counsel, had any notice of the names of the commissioners struck by the defendant, nor of the order intended to be obtained for the striking commissioners on the part of the plaintiff. Defendant, after obtaining the commissions, went to *Bal-timore*, where interrogatories were prepared to be forward-ed with the commissions. The interrogatories and com-missions were taken to the plaintiff's counsel, and a pro-position made to him to strike commissioners, if he did not approve of those persons to whom the commissions had issued, so that new commissions might be ob-tained. The plaintiff's counsel alleged that his cli-ent had left *Baltimore* for *Elizabeth-Town* in the state of *New-Jersey*; that he did not himself know of pro-per characters, nor would he consent to any thing, but would take all legal advantages. It was then proposed, (as stated on the part of the defendant,) that the counsel should write to the plaintiff, and the defendant would wait, and retain the commissions until he should hear from the plaintiff; but this was declined by the plaintiff's counsel, and the commissions were forwarded. But on the part of the plaintiff, it was stated, that the defendant proposed to wait *one post*, which the plaintiff's counsel observed would not answer, as he could not hear from the plaintiff in that time.

CHASE, Ch. J. The court consider the order as not done in the usual form for striking commissioners; but it appears to have been done in the hurry of business at the

1807.

De Sobry
*vs*
De Laistre

rising of the court. Time ought always to be given for striking commissioners; and an order of court for that purpose should have been made. In this case the order is general, that the commissions were to issue on commissioners being struck. It should therefore be executed in a reasonable time. The commissions issued precipitately, without sufficient time to the plaintiff to strike commissioners; and if the case depended solely upon the docket entries, it would be considered as irregular. But upon the disclosure of facts stated in the affidavits, it appears that the plaintiff's counsel had an opportunity given him of striking commissioners. If the court had made an order, they would not have allowed more than five days for striking commissioners. The defendant, it appears, offered time—*"one post."* Here, too, is a material fact in which the affidavits do not agree. The defendant's attorney's affidavit states, that no specific time was proposed, but generally that the defendant would wait an answer from the plaintiff; but the plaintiff's attorney's affidavit states that the time was limited to *"one post."* The court, however, suppose this time was sufficient to obtain the names of commissioners, situated as the parties were. The irregularity of issuing the commissions was cured by these circumstances. Every thing which tends to bring the justice of the case before the court ought to be done. These commissions were returned to the last term, when this objection might have been made; and if the commissions had been considered by the court as having issued irregularly, they might have been suppressed, and the defendant would have had time to issue new commissions, upon the same terms as the former, "that if they were not returned at this term it would be no cause for a continuance." But if they had been considered as illegally issued, and if the plaintiff thought that the commissions had been improperly executed, he had then an opportunity of counteracting them, by obtaining at that time new commissions upon the same terms the defendant had obtained his; for it is an established rule of this court, that upon the return of a commission, the opposite party has a right to a continuance of the cause until the next term. For these reasons the court are of opinion, that the commissions, and the testimony taken thereunder, ought to be read to the jury.

3. *The first bill of exceptions.* The plaintiff gave in evidence, that he is the eldest son of *Michael,* the defendant's testator. He also read to the jury two original letters from his father to him, dated at *Bourdeaux,* in *France,* and addressed to him at *Paris,* in *France,* one dated the 21st of May 1793, wherein the testator acknowledged that he had received a sum of money for the plaintiff, and as he could not invest it, he proposed to take the sum of 12,000 livres himself, at 5 p. c. interest; and the other letter, dated the 1st of August 1793, acknowledging that he had received for the plaintiff 28,000 livres from Mrs. *Aubin.* He also offered in evidence, that sometime in the year 1794, the testator, and the plaintiff, came to *Philadelphia,* where or near to which the testator resided till the 6th of April 1796; and that the plaintiff, from the time of his arrival at *Philadelphia,* until the present time, hath always resided within the *U. S.* He also read in evidence a memorandum, in the hand-writing of the testator, made in a memorandum book kept by him, which memorandum bears date on the 30th of September 1795, and is as follows, viz. "The four servants given to my eldest son by his marriage contract, to wit:

*Bruno,* a mulatto, hair-dresser, estimated at  4500.
*Antoine,* my domestic hair-dresser,  3000

Liv.  7500

Both of whom are dead.
*Noel,* a cook—sold,  2850
*Maydelon,* a washer-woman,  2000.

4850

12360

N. B. He returned to me the above mentioned four servants on his departure from *Martinique;* for which said servants, as well as for the sum of 40,000 livres, which he caused to be delivered to me at *Bourdeaux,* before his departure for *North America,* my estate is responsible to him." He also read in evidence a letter from the testator to him, bearing date at *Philadelphia,* on the 22d of May 1795, and addressed to him at *Trenton,* viz. "I have not yet been able to employ myself in making use of the bill of exchange of 170 dollars, (3440 livres,) on *Havre,* but

I will attend to it as soon as my health permits me to go out." Also another letter from the testator to him, bearing date at *Philadelphia*, on the 15th of October 1795, and addressed to him at *Trenton*, of which the following is an extract:—"I remitted to *St. Claire Claudel* your bill of exchange, drawn by *Moisy*, for 170 dollars, (3440 livres,) that he might receive payment and pass it to the credit of my account." He also gave in evidence, that all the aforementioned letters, and the memorandum, are in the handwriting of the testator, and that the letters were by him transmitted to the plaintiff, and duly received, according to their respective dates and addresses; and they were offered and given in evidence, to prove the debt due to the plaintiff, for which this action is brought, as stated in the account by him filed. He also gave evidence that the several sums of livres mentioned in the said letters and memorandum book, were of the value of, and amounted in the whole to the sum of $9628 63 current money of the *United States;* and that the usual and legal interest of money in *France*, and her colonies, was at the times aforesaid five *per centum*. He also gave in evidence, that the testator departed this life on or about the 20th of July 1797, and that the defendant, as his executor, did, in the month of October in the same year, receive into his hands money belonging to the estate of the deceased to the amount of $13,092 68 current money of the *U. S.* out of which he claimed an allowance for disbursements and commissions, to the amount of $1200 07 like money, leaving in his hands, subject to the legal claims against the estate of the deceased, the sum of $11,892 61 current money. The defendant then gave in evidence, that the testator, in his life time, duly executed certain wills and codicils, which were made and executed respectively, at the respective times and places therein respectively stated, viz. "I *Michael Augustin Terrier de Laistre*, aged 61 years, generally resident in *St. Pierre*, in the Island of *Martinique*, but now at *Philadelphia*, in *Pennsylvania*, one of the thirteen *United States* of *America*, being desirous of making known to my children my final intentions, have made and written, with my own hand, this my last will and testament, to which I particularly enjoin my eldest son to manifest his respect by an exact performance of its contents; hereby revoking all former wills and codicils by me at any time

heretofore made, and declaring this to be alone good and valid." The bequests material to the question in controversy, are the following: 7th. "I give and bequeath unto my natural son *Chery*, now about twelve years of age, and raised from his childhood at *St. Pierre*, in *Martinique*, by *Madame Duquesnay*, the sum of *fifty thousand* livres, colonial money, payable on the partition of my estate, unless it should please better my heirs to admit him as co-heir, conformably to the tenor of the acts passed by the national assembly in favour of illegitimate children; then and in such case, I will and direct that he have his proportionable share, according to the right vested in him by law, if my heirs do not choose rather that the said sum of 50,000 livres should be paid him out of the surplus of my estate; after payment of debts, &c. Enjoining him moreover to continue to bear the name of *Chery Terrier*." 10th. "I hereby constitute and appoint *Anthony Viau*, my agent at present in *Martinique*, executor of this my last will and testament," &c. "And in case of the death or absence of the said *Anthony Viau*, I constitute and appoint, in his place, my friend Mr. *Crassous*, merchant of *Martinique*, begging him to accept this charge, with the same indemnification as aforesaid, and thereby give me this last mark of friendship." 11th. "As to all the rest and residue of my estate, whether real or personal, debts due me, &c. which I may leave in *America*, I constitute and appoint Messrs. *De Saa*, father and son, executors thereof, to administrate on that property only of which I may die possessed in *America*, conformably to my intentions expressed in this my last will and testament, of which I have left them an authenticated copy." 12th. "I hereby name and constitute my eldest son, *Lewis Augustin Blaise Terrier de Laistre*, as an heir in my succession; and I also will and direct, that after my decease, a true and faithful inventory be made of all my property, out of the amount of which property, all the bequests generally expressed in the present testament shall be faithfully discharged; and in case *Anthony Mark Terrier de Laistre*, younger brother of my said eldest son, should not please to divide with him the estate of their mother, conformably to the schedule I have annexed to this my last will and testament, in which schedule his moiety is clearly designated, but should choose rather to recur to the general inventory which will be made

after my decease, then and in such case I will, and most expressly direct, that the sum of 40,000 livres, reserved from the portion brought by me in my marriage contract, and also the sum of 2,000 livres, which 1 am entitled to claim and receive from my wife's estate, by virtue of the said marriage contract, the said sums amounting in all to the sum of 42,000 livres, be deducted and reserved for my grandchild, *Augustin Paul Emile*, son of my eldest son, who shall possess and enjoy the same on the surety of his judicial oath, until his said son *Augustin Paul Emile* attain the age of 21 years. or be married; and in case this reserve should give rise to any legal difficulty, I then give and bequeath, purely and simply to my said grandchild, the sum of 42,000 livres, to be employed and disposed of as above directed, and payable out of the surplus of my estate, after all my debts, and the bequests herein contained, shall be discharged. Authorising, moreover, by these presents, my eldest son to renounce my succession, and retain the portion brought by him in this marriage contract, without returning any thing to the general stock; he also claiming from my estate all that I lawfully owe him, whether for the different sums which, on my last voyage, he caused to be paid me in *France* by Madame *Aubin*, or, for the four domesticks I gave him by the said contract, and which, before his departure from *Martinique*, he delivered for my account and risk to Mr. *Vicu* my attorney. 13th. "I constitute and appoint, as heir of my succession, my youngest son, *Anthony Mark Terrier de Laistre*, whether he prefers to rely on the partition of the property possessed in common by his mother and myself, according to the statement I have subjoined to this my last will and testament, in which his portion of the maternal estate is distinctly marked out, or chooses rather to recur to the general inventory to be made after my decease, out of which his portion will be ascertained by law. I also will and direct, that the share accruing to him from my estate, shall consist of immoveable property, and my will and meaning is, that the said immoveable property be not aliened by him under any pretext whatever, in order that it may descend to his issue, and in default of such issue, be equally divided among the children of his elder brother; this disposition not being regarded as an entail, but as a prudential and safe mode of securing some part of my estate

1807.

De Sobry
vs
De Laistre.

to my grandchildren." 14th. "As the laws recently promulgated by the republic on the subject of inheritances, restrain the testator from the free disposal by will of more than one sixth part of his possessions, and allot the residue; the remaining five-fifths, to his natural heirs; and as it is impossible for me to ascertain at this juncture the amount of my property, I will and direct, that in case my two legitimate sons, or any one of them, should choose to adhere to the precise letter of the law, in opposition to the dispositions contained in this my last will and testament, then and in such case, that my natural son *Chery*, already a particular legatee by these presents; and my four natural daughters called *Adelaide, Mariette, Rosette* and *Marguerite*, also legatees as aforesaid, be all five called in as co-heirs in my succession, each respectively renouncing to his or her respective legacy, and drawing from my estate such proportionable share as the law allows. And, as for the one-sixth of my property, of which I may freely dispose, I will and direct that as soon as it is determined by the inventory, the amount of the bequest made to the mestive *Sophia*, be deducted therefrom, and paid her in full, with all possible dispatch, which bequest I hereby confirm and ratify. And I also will and direct, that the surplus of the one-sixth, after such deduction made, be divided among the other legatees named in this my last will and testament, such share accruing to each as is proportionable to the amount of his or her respective legacy." "Such are my last desires clearly expressed in the present testament, written with my own hand, and which I fully confirm and ratify, after having attentively perused and reperused the same. Done and signed by triplicate, and one copy to be deposited with Messrs. *De Saa*, father and son, appointed by these presents my executors for the administration of that alone of which I may die possessed in *America*; a second transmitted to *Martinique*, to be there lodged with a notary; and a third enclosed in my port folio, all three copies being sealed with three seals, bearing the stamp of my cypher, as may be seen in the margin, at *Philadelphia*, in *Pennsylvania*, one of the thirteen *United States* of *America*, this first day of April, in the year of our Lord 1795." A *codicil*, revoking the legacy to *Sophia*, confirming and ratifying all other parts of his will. Signed 29th of June 1796.      "*Terrier de Laistre.*"

"Last will and testament of *Michael Augustin Terrier de Laistre,* done in the presence of Messrs. *Ciceron & Le Blanc,* notaries of *St. Pierre,* in the Island of *Martinique.* On this 14th day of April 1797, about 11 o'clock in the morning, we the undersigned notaries attended *Michael Augustin Terrier de Laistre,* chevalier, &c. resident in the city of *St. Pierre,* &c. aged 64 years, lawful son of, &c. who being confined to his bed, infirm of body, but of sound and disposing mind, as it hath appeared to us by his several questions and observations, and wishing to arrange his temporal affairs before the moment of his death, which is uncertain, requested us to receive the subsequent codicil and expression of his testamentary desires, which he dictated word for word in the following manner:" The bequests material to be mentioned are the following: 8th. "The said testator gives and bequeaths unto his natural son *Cheri,* about 15 years of age, and raised from his infancy in this island by Madame *Duquesnay,* the sum of 50,000 livres colonial money, to be appropriated to his subsistence and education; begging his executor hereinafter named to transmit the funds requisite for the payment of the said sum to Mr. *Benjamin De Sobry,* merchant of *Baltimore,* who has had the goodness to act the part of a father towards him during the absence of the testator; entreating him therefore to continue the same parental care, and with the sum which he bequeaths to the said *Cheri,* to place him in a situation that may ensure to him a life of tranquillity and ease; enjoining moreover his said natural son to continue through life to bear the name of *Cheri Terrier.* The said testator also gives and bequeaths to the said *Cheri* his wardrobe, rings, jewels and private fire arms, which shall be found belonging to him after his decease; reserving only from the number of his jewels his diamond cypher and repeating watch, of which he has disposed by his will of the 1st of April 1795. Hereby ratifying and confirming the said disposition." 11th. "The said testator gives and bequeaths unto his friend *Benjamin De Sobry,* merchant of *Baltimore,* all his moveables and effects, of what nature soever, of which he may die possessed in *America;* and also whatever he may discover to be due to him; charging him, however, by these presents, with the payment of his debts in the said continent, [*dans le dit continent,*] if any there be: Hereby also

fully empowering him, as well to recover whatever may be due to him, as to discharge his debts aforesaid, without being held accountable for the said effects to any person whatever." 14. "The said testator names and institutes, as his heirs in his said succession, his eldest son, *Lewis Blaise*, as well as his younger, called *Anthony Marc Terrier de Laistre;* hereby constituting and appointing them his universal legatees for equal shares in his said succession; strenuously recommending to them to preserve harmony between themselves; and respect for the present codicil, which the said testator wills and directs should be fully executed in all and every part. And his will and meaning also is, that the part and portion of that one of his said sons, who shall first die *without issue,* shall remain to the survivor." 15th. "The said testator hereby constitutes and appoints, as his executor, *Dominick Peschier,* merchant of the city of *St. Pierre,* of whom he earnestly requests this good office. And in consideration that the function of executor is necessarily attended by some trouble and derangement, he begs him to accept the bequest which he now makes him, of the sum of 13,200 livres colonial money, which said sum he may take before the delivery over of his succession to the heirs; the said testator dispossessing himself of all his estate, in order to invest him with the same, from the day of his decease, conformably to custom." 16th. "The said testator revokes all other wills and codicils by him heretofore made, declaring this alone to be good and valid, as well as his will and testament, written with his own hand, of the 1st of April 1795, fully ratifying and confirming the same, and all the gifts, bequests, matters and things, therein contained, except only the changes made and designated in the present codicil; and the said testator also wills and directs, that the said testament shall be joined to the present codicil, to be returned into his hands whenever he shall please to demand the same, which has been regularly marked *ne varietur,* by the above mentioned notaries." "Done," &c.

Signed,     *Terrier de Laistre.*

*Ciceron & Le Blanc,* Notaries.

Collated,     *Ciceron."*

Other codicils of the 14th April 1797, 25th of April 1797, and 10th July 1797, making some trifling alterations, and confirming other wills and codicils not altered, &c.

The defendant also gave in evidence, that the executor testamentary therein named, that is to say, *Dominique Peschier*, residing in the Island of *Martinique*, did take upon himself, after the death of the testator, the burthen of the execution of the wills and codicils, according to the laws of the *French* government, in force and effect in that island; and that he did on the 24th of July 1797, write to the defendant a letter, and send the same with a copy of a certain part of the will or codicil, dated the 14th of April 1797, to enable the defendant to carry into execution that part of the will in which the defendant was interested. The defendant also gave in evidence, that *Peschier* did, on the 4th of January and the 15th of December 1798, write letters to the defendant, and send the same, of which the following are true translations: That of the 4th of January 1798, is as follows: "I am glad to see by your's that you had duly received my letter of the 24th of July, which informed you of the death of Mr. *Terrier de Laistre*, (of whom I was the executor,) and forwarded you a copy of the articles of his last will and codicils, which concern you, and his son *Chery*, whom he recommends to your good cares. An inventory has been made, in legal forms, of all the credits and debits: But the latter cannot be perfectly known, because the deceased had many friends in *France*, with whom there are accounts to settle, and which cannot be done by reason of the war. It results, that the net amount of the estate cannot be ascertained, of course the inventory is imperfect, and cannot be rectified till after the war. Messrs. *Terrier de Laistre* have taken the quality of conditional heirs, and have lately applied for a delay of six months, which has been granted to them. After its expiration they will probably ask for more time, which will also be granted; and this will go on until the return of peace. Until they take a determination on the subject, I cannot dispose of any thing. All the furniture and effects which are coming to young *Chery*, have been inventoried and shut up in a cupboard. Whatever may happen, the estate is good, but the heirs wish to be perfectly acquainted with it. They have told me that they are well disposed to fulfil the will of their father, if they are not too much injured. The law grants them the option to have the community of their mother continued to the death of their father, because he had not made a legal in-

ventory; they wish to know which is more advantageous to them, either to have the community continued, and to receive their legitim, or to take the quality of heirs. This is the actual state of the business. I am going on with the liquidations in collecting the debts, and paying what is legitimate." The letter of the 15th December 1798, states that the inventory, on account of the war, had not been completed; and it also stated, that "the heirs moreover, (one of whom, Mr. *Terrier de Laistre* the younger, is now here, and represents his brother, who is on your continent, and who has sent him his power,) being desirous to administer their properties themselves. These considerations, and the impossibility to know how long it will require for the liquidation; I say, that actuated by all these reasons, I have rendered my accounts to the heirs, who from that time, administer their properties themselves. I have already informed you, that these gentlemen oppose the execution 'of the will. so far as regards the legacies, and that the suit is going on. Mr. *Duquesnay* has by a decree of the court, been nominated guardian to the young *Chery*, and defends his interest in that quality. It is necessary to go on with the suit, and wait for its conclusion, in order to abide by the judgment." He also gave in evidence the proceedings in the orphans court of *Baltimore* county, upon the exhibition and proof of that part of the codicils and wills of the testator, being the 8th and 11th clauses in the will or codicil of the 14th of April 1797, as herein before mentioned, with a direction thereto annexed by the testator, requiring certain persons, in whose hands some of his effects were, to deliver the same up on notice of his death, to the defendant, and proof thereto, and to the extract of his will annexed, of the hand-writing of the testator. Upon which letters testamentary were granted to the defendant on the 15th of November 1797, and which letters testamentary the defendant also gave in evidence to the jury. He further gave in evidence, that the testator was a native of the kingdom of *France*, and for many years before his death was a citizen of the Island of *Martinique*, and resident of that Island, which was, during the whole time that he there resided, until his death, and at the time of his death, subject to, and governed by, the same laws as the other Islands of the *West Indies* dependant on the government of

*France.* That the testator came to the *U. S.* on the 6th of November 1793, and left the *U. S.* to return to the Island of *Martinique*, on the 6th of September 1796, and that having arrived at that Island, he departed this life, at that place, on the 19th of July 1797. That the sum of 12,560 livres, money of the Islands, which constitutes the first charge in the plaintiff's account, is the estimated value of four slaves, which were delivered by the testator to his son, the plaintiff, as a part of his marriage portion, and which were, by the plaintiff, again returned to the testator, some time about the year 1792. That the plaintiff was not entitled, by the *French* laws regulating this question, to claim either that sum, or interest thereon, or any part thereof, as the creditor of his father, or of his father's estate, unless he absolutely and entirely repudiated and delivered up the succession, and his right as heir, after his father's death, and renounced all right in, and claim to, the succession of his father; and that the plaintiff had not so done. That the sum of 12.000 livres, in the account mentioned, was lent by the plaintiff to the testator, and at his instance received by the testator in assignats, at their nominal value, and not in specie, and that assignats at that time were only in comparison of specie, valuable in proportion as 44 to 100; and that the sum of 28,000 livres, in the account mentioned, was lent by the plaintiff, in *France*, to the testator, and by him received in *France* in assignats, and not in specie, at the nominal value of assignats, and that assignats, at the time of this loan, were only of value compared with specie as 33 to 100, and that the sum of 12,000 livres were advanced to the testator on account of the plaintiff, the 21st of May 1793, or thereabout, by Madame *Aubin Blampre*; and the sum of 28,000 livres by the same lady to the testator, on or about the 1st of August 1793; and that the plaintiff did afterwards repay the same advances to her in assignats, at their nominal value, and not in specie. That according to the *French* laws operating upon and regulating the said loans, the plaintiff is not entitled to receive interest of any kind thereon, or on either, except from the time of bringing this suit. And as to the claim in the account of 3,440 livres, the defendant gave in evidence, that one *Moisy*, being indebted to the plaintiff in the sum of $170, drew a bill in favour of the plaintiff upon his, the drawer's correspondent, in *Havre-de-*

*Grace*, to be there paid in assignats, at the exchange of 20 livres for each dollar, and that the same being indorsed by the plaintiff, was delivered to the testator to be remitted to his correspondent in *France*, to receive from the person upon whom the bill was drawn the amount thereof in assignats, and that for want of proof being furnished by the plaintiff, that he had left *France* with proper passports, and had resided constantly in the *United States*, and that the plaintiff was not subject to the laws of the *French* government against emigrants, the correspondent of the testator never received any payment of the bill, and that the testator received no part thereof, but that the bill yet remains unpaid in the hands of the person to whom it was remitted. He further gave in evidence the settlement made by him in the orphans court of *Baltimore* county, whereby it appears that he charges himself with the receipt of $13,092 68 current money, received of the effects of the testator, and credits himself with $1,200 07 like money, for disbursements, debts, &c. by him paid, and for which he is allowed, leaving the sum of $11,892 61 like money, in the hands of the defendant, and which he retains, being left him by the deceased's will. That the sums with which he charged himself in the account, proceeded from the sales of divers goods, wares and merchandizes, which were in the *U. S.* when the testator died, and from certain debts which remained due in the *U. S.* to the testator, and from remittances of property which he made after his arrival at *Martinique*. That several claims of considerable value which the testator had against persons in the *U. S.* when he departed therefrom to return to *Martinique*, and which the defendant was authorised by him to receive, were afterwards paid to or settled with the testator himself, after he went to *Martinique*, and therefore did not come into the hands of the defendant, but went to increase his estate in the Island of *Martinique*; and to establish the same, the defendant offered in evidence, a letter written by the testator to the defendant, bearing date at *Martinique*, on the 20th of March 1797. The defendant also offered in evidence, the different remittances and funds remitted to the testator while in the *U. S.* including the merchandise received by *Anthony Butler*; the remittances made by him to his creditors while in the *U. S.* his expenditures while there, and the sum he carried

rrom hence when he left the *U. S.* and to show and prove the same, offered in evidence certain extracts from the memorandum book produced by the plaintiff, in the handwriting of the testator, viz:

"My general account in the continent                    Dr.
1795.

| | | | |
|---|---|---|---|
| June 25. | Balance of 4 Bills of Exchange for my adventure, | | $3,198 $\frac{35}{100}$ |
| 1796. | | | |
| June 18. | To *Duvall Monville*, received for his account by a bill of Mrs. *Auguart*, his sister, | | 792 |
| July 23. | To *Viau*, net amount remitted by him as appears, &c. | | 4,586 $\frac{53}{100}$ |
| | | | $8,576 $\frac{88}{100}$ |

1795.                         Cr.

| | | | |
|---|---|---|---|
| Dec. 31. | By 13 months expenses, as appears by the particulars. | | $1,225 |
| 1796. | | | |
| Sep. 30. | By 9 months do. do. | | 936 |
| | For 22 months expenses, | | $2,161 |
| | By remittance to *St. Claire*, | 800 | |
| | By do. to *Ollie*, | 2,400 | |
| | By do. to *Eyma*, | 800 | |
| | By do. to *Dancemont*, | 124 $\frac{10}{100}$ | 4,124 $\frac{10}{100}$ |
| | For advances to divers, | | |
| | To *Deville*, junr. | 370 | |
| | To Mrs. *Luppi*, | 533 | 903 |
| | Furnished to divers, | | |
| | To *Chery*, | 593 | |
| | To *De Laistre*, | 722 | 1,315 |
| | For my passage 50, for my expences 3 $\frac{38}{100}$ | 53 $\frac{38}{100}$ | |
| | Carried with me in specie | 20 | 73 38 |
| | | | $8,576 $\frac{88}{100}$ |

1807.

De Sobry
vs
De Laistre

Concluded at *Baltimore*, this 5th Septem. 1796, until the end of September."

The defendant also offered evidence to prove, that there was a debt due from the plaintiff to the testator, at the time of his death, amounting to the sum of 111,537 livres, 13 sols and 4 deniers, money of the Island of *Martinique*, which sum of money, at the time above mentioned, was of the value of $13,519 63 current money of *Maryland*, which ought to be deducted from and set off against any thing which might be due from the testator's estate to the plaintiff, even if he had any claim which as a creditor he could sustain or support. He further gave evidence, that Pechier did, on or about the 7th of July 1798, deliver over to the plaintiff, and his brother, *Marc Anthony Terrier de Laistre*, as heirs of the testator, the succession of the testator, and the papers relative thereto; and that the plaintiff, and his brother, have since had the same under their management, and in their possession; and that the plaintiff hath intermeddled with the estate, and acted in respect thereof as heir; and also that the succession or estate of the testator is not insolvent. He also offered evidence to prove, that the acknowledgment entered in the books and papers of the testator, produced by him, of the sums for which his succession ought to account to the plaintiff, or in the *French* language "*dont ma succession doit lui tenir (ou faire) compte*," only admits that such sums are to be settled with the plaintiff out of the estate real, personal and mixed, which he should leave at the time of his death, according as the laws of *France*, regulating the Island of *Martinique*, and there used and in force, authorises and directs. He also gave in evidence, that the devise to him is not expressed to be under any secret trust. That to prove a devise to be a secret trust, by the *French* laws, the testimony of witnesses cannot be admitted; but that the supposed secret trustee is to answer, upon oath, whether he has lent his name or not, directly or indirectly. That according to the *French* laws, regulating this case, the plaintiff has no interest or rights against the defendant, either as a debtor or legatee of the testator, or as debtor of the testator's estate, which he as a creditor, or in any manner, can enforce, unless the plaintiff had first solemnly repudiated and given up his right of inheritance to the succession, and had renounced all right

as heir to the succession; and that the term "succession," in the *French* laws, means the whole estate real, personal and mixed, of every nature and description, whereof a testator dies seized or possessed. That the Island of *Martinique*, and the citizens thereof, are subject to, and regulated by the laws mentioned in the execution of the respective commissions which issued in this cause; and that the law is as stated in the respective commissions, by the witnesses examined on the execution of those commissions upon the legal interrogatories put to them on the execution of the commissions respectively; which interrogatories and answers thereto he offered in evidence. He also offered evidence, that the plaintiff, soon after the death of the testator, went to the Island of *Martinique*, and was residing there about a year. That no insolvency of the succession of the testator can be proved or established, so as to admit suits to be supported upon the grounds of an insolvency, unless the estate has been liquidated and settled by regular judicial proceedings in a court of justice, where the accounts are settled, and the insolvency shown, and that any person, who is to be affected by the insolvency, may, upon suit being brought against him, to be supported, in consequence of that insolvency, contest the same upon the trial, unless he was a party to the judicial proceedings establishing the insolvency, and had there an opportunity of being heard, and of contesting those proceedings. That the testator was indebted to divers persons in *France*, for debts contracted, in assignats, and otherwise, which were in his power to repay in assignats, which had become greatly depreciated; that in order to pay off his debts aforesaid, with the least sum possible, and thereby render his succession the more valuable to the plaintiff, and his other son, his heirs, he solicited the said remittances to be made to him, while in the *U. S.* and endeavoured to have property transferred to him, to employ the same, as far as there should be a surplus after his own support, to make remittances to *France* to pay and discharge those debts; and that the said remittances were not endeavoured to be procured, or his property sought to be transferred, to the *U. S.* to dispose of it contrary to the laws of *France*. He also gave in evidence what were the remittances the testator received in property, or otherways, while in the *U. S.* and that they were expended in the support of himself and

family while in the *U. S.* and in remittances for payment of his debts. That assignats was a species of paper money, or paper currency, issued under the authority of the *French* government, since the commencement of the *French* revolution, at different times, and which, when issued, were, or since being issued became, of much less value than gold or silver current coin, and that rating the value of dollars with livres in specie, the dollar in specie is equal to five livres tournois and five sols; whereas the dollar in specie has been, and is worth much more than the same number of livres tournois in assignats, according to the different state of depreciation of assignats. The plaintiff then, to prove that the *French* laws cannot apply to, or operate upon this case, gave in evidence, that the defendant took out letters testamentary in this state upon the estate of the testator situated therein, and that the money received into his possession, as above set forth, and belonging to the estate of the deceased, was money lodged by the deceased, in his life-time, in the *U. S.* and that the money, or goods and merchandise, from the sale of which it arose, was withdrawn from the *French* dominions by the testator in his life-time, and lodged in the *U. S.* for the express purpose of evading the laws of *France* and *Martinique*, and of disposing of them by his will to the prejudice of the plaintiff, and in such a manner as those laws expressly forbid. And the plaintiff also gave in evidence the will of the testator, proved by the defendant in the orphans court of *Baltimore* county, on which letters testamentary were granted to him by that court. The plaintiff, to prove that the debt for which this action is brought is an *American* debt, and not subject in any manner to the operation of the *French* laws, gave in evidence, that the two sums of 12,000 livres and 28,000 livres, amounting to 40,000 livres, received from the plaintiff by the testator, through Madame *Aubin*, in *Bourdeaux*, were obtained from the plaintiff by the testator, under an expectation held out by the testator of his employing them beneficially in the purchase and exportation of merchandise for the benefit of the plaintiff, and that the sum of 34,925 livres, part of the 40,000 livres, were actually invested in the purchase of merchandise, by the testator in *France*, on the 29th of December 1793, and that the merchandise was on that day actually shipped by the testator to *Philadel-*

1807.

De Sobry
vs
De Lausire

*phia*, and did arrive at *Amboy*, in the state of *New Jersey*, on or before the 22d of May 1795, and were there received by the testator into his possession, and sold and disposed of for his own use and benefit, about that time. He also offered in evidence, that the sum of 40,000 livres, lent by him to the testator, were by him received with a view to the removal of the testator, and of the plaintiff, to the *U. S.* and to the repayment of the loan in the *U. S.* And for that purpose he gave in evidence a part of the will of the testator, made at *Philadelphia* on the 1st of April 1795. He also gave in evidence the aforementioned memorandum, bearing date on the 30th of September 1795; and proved that it was made in *Philadelphia*, in the *U. S.* and that at the time of making the memorandum, and also the will of the 1st April 1795, the plaintiff resided within the *U. S.* and was then known by the testator so to reside. And also to prove that the debt due to the plaintiff by the testator, as acknowledged in the will of the 1st of April 1795, and by the memorandum of the 30th of September 1795, was on the 14th of April 1797, a debt due in the *U. S.* within the legal meaning and operation of the *eleventh* clause of the will of the 14th of April 1797, and therefore chargeable on the legacy left to the defendant by the *eleventh* clause, the plaintiff gave in evidence, that from the 1st of April 1795, until the 14th of April 1797, and on those days respectively, the plaintiff constantly resided within the *U. S.* and was on those days, and during the whole of the period between them, known by the testator to reside in the *United States;* and that the words "in the said continent," or "*dans le dit continent,*" in the *eleventh* clause of the will of the 14th of April 1797, mean and were intended by the testator to express, "within the *United States.*" The plaintiff, to prove that by the *French* laws, if applicable to this case, he cannot be prevented from recovering in this action, gave in evidence, that by the laws, "as no man can bestow on another that which does not belong to himself, therefore every species of debt due by a testator, even those least favoured, is preferred to every species of bequest by will;" and that by those laws an heir, with benefit of inventory, who is also a creditor of the deceased, to whom he is an heir, may recover his debt, and also receive his portion of the estate; and that the children of a deceas-

ed person, or any of them, may by the said laws require that an inventory of the estate be made and completed, and that they be allowed a reasonable time, to be settled by the courts of competent jurisdiction after such completion, to make up their determination before they elect to renounce the inheritance altogether, or to take it as heirs with benefit of inventory, within which time they may elect to take the inheritance as heirs, with benefit of inventory, whereby they do not lose their rights as creditors. And to prove that the plaintiff is heir of the testator, with benefit of inventory, and hath done no act whereby he could be rendered heir pure and simple, according to the said laws, the plaintiff gave in evidence, that he hath not in any manner intermeddled with the estate of the testator in the Island of *Martinique*, nor received any thing therefrom as heir, and that the administration of the estate hath always remained in the hands of, and been conducted by, *Dominick Pechier* of that island, the executor appointed by the will of the 14th of April 1797, who hath made an inventory of the estate conformably to the laws of that island; and that the estate in the island is wholly insolvent, and unable to pay the debts chargeable thereon. That by the *French* laws, interest is chargeable on all mercantile debts and transactions, and on money lent for the purposes of commerce, from the time of such loans respectively. The plaintiff, to prove that the defendant cannot be considered as a legatee under the *French* laws, and the laws of the said island, admitting those laws to apply to this case, and to operate upon it, and therefore cannot avail himself of the character of legatee by way of defence in this action, gave in evidence, that by the said laws any legacy given to an illegitimate child, either directly or by a declared trust, to the prejudice of the legitimate children of the testator, is void, except as to such part of such legacy as the courts of the place shall determine to be a reasonable subsistence for such illegitimate child, in proportion to the extent of the estate, and other circumstances; and that by the said laws all legacies given upon a secret trust, for whatever purpose, are absolutely void. And the plaintiff also gave in evidence, that the legacy given to the defendant, in and by the will of the 14th of April 1797, was given on a secret trust for the benefit of a certain *Cheri Terrier*, an illegitimate son of the tes-

'1807.
De Sobry
vs
De Laistre

tator, and to the prejudice of the plaintiff, his legitimate son. The plaintiff, to prove that the will of the 14th of April 1797, and the legacy claimed by the defendant under that will, have been and are annulled, and wholly set aside by a court of competent jurisdiction in the Island of *Martinique* offered to read in evidence an exemplification of a judgment or sentence rendered by the supreme court of that island, which exemplification purports to be attested under the hand and official seal of the grand judge of the island, and is as follows: "7th of May 1801. *George* the third, by the Grace of God, King of *England*, &c. &c. To all present and to come, greeting. Between Messrs. *Terrier de Laistre*, brothers, beneficiary heirs of their father, appealing from the sentence rendered in the Sené-chausse of *St. Pierre* on the 20th March last, on the one part, and Mr. *Duquesnay*, as well in his own name, being a donatee of his late wife, who was a private legatee of the late Mr. *Terrier de Laistre*, as acting tutor for the minor *Chery*, private legatee of the said *Terrier de Laistre*, defendant, on the other part, and also Mrs. *Pigache*, residing in *St. Pierre*, and Mr. *De Sobry* residing in the *United States* of *America*, defendants likewise, on the other part. And between Mr. *Duquesnay* in his quality of a donatee of his said wife, who was a private legatee of the late *Terrier de Laistre*, appealing from the same decree, as to the main part thereof which condemns him to the costs, on the one part, and the said *Terrier de Laistre*, brothers, defendants, on the other part, and also Mrs. *Pigache* and Mr. *De Sobry*, likewise defendants, on the other part. And also Mr. *Duquesnay*, in his quality of tutor for the minor *Chery*, also appealing from the said decree, on the one part, and Messrs. *Terrier de Laistre*, brothers, in their said quality, defendants, on the other part, and also Mrs. *Pigache* and Mr. *De Sobry*, likewise defendants, on the other part. And also between Mrs. *Pigache*, appealing also from the same sentence, as to that part which has condemned her to the costs only, on the one part, and the said *Terrier de Laistre*, brothers, defendants, on the other part, and also the said Mr. *Duquesnay*, as well in his own name as in his quality of tutor for the minor *Chery*, and M. *De Sobry*, defendant likewise, on the other part. Seen, &c. &c. The court having heard the king's attorney general, acting in his conclusi-

ons, and Mr. *Ducaurroy*, counsellor, in his report pronouncing upon the appeal of the said Mrs. *Pigache*, and of Mr. *Duquesnay*, as well in his own and private name, as in his quality of tutor for the minor *Chery*, have annulled the said appeal with fine and costs. And pronouncing likewise on the appeal entered by Messrs. *Terrier de Laistre*, brothers, have annulled both the appeal and the object thereof—enacting and stating, as well upon the conclusions taken by them in the main action, as upon those of the appeal—Declare the testament and codicil of the late *Terrier de Laistre*, of the 1st of April 1795, 14th April and 10th July 1797, to be null and of no effect; in consequence, reject the demand in delivery of the legacies made to them by the said testament and codicil, and the costs, notwithstanding, to be paid out of the mass of the estate. Ordain, &c. Done in the Sovereign Council of *Martinique*, on the 7th of May 1801. Delivered the present exemplification to citizen *Dominique Pechier*, merchant in *St. Pierre*, as executor of citizen *Terrier de Laistre*, at his request, on this 13th day of Germinal, 12th year of the *French* Republic, or on the 3d April 1804, (old style.)

"*Le Camus.*

"Sealed on the same day.

"*Depaz.*

"We, Grand Judge of *Martinique*, certify all whom it may concern, that the above signature is that of *C. Le Camus*, Chief Secretary of the Court of *Martinique*, and that faith ought to be given to it as well in as out of judgment. We certify farther, that stamps are not used in this colony.

(Seal.)    Given at Fort *de France*, the 13th Germinal, 12th year of the Republic. Sealed with our seal, and countersigned with our signature.

"*Le Fessier, Grand Pres.*

"By the Grand Judge,

"The Secretary,

*Fouchey*, Son.

"*Louis Arcambal*, consul of *France* for the state of *Maryland*, one of the *United States* of *America*, residing at *Baltimore*, certify, that Mr. *Le Fessier de Grand Pre*, who has signed the above legalization, is Grand Judge of the Island of *Martinique*; that the signature is truly his, and that faith ought to be given to it, as well in as out of judgment. Certify also, that the Grand Judge is the only

authority existing in the *French* colonies for the legalization of judicial acts.

In faith of which we have signed these presents, and have thereunto affixed the seal of the consulate at (Seal.) *Baltimore*, the 6th Brumaire, year 13th, (28th October 1804.)

*L. Arcambal.*"

The plaintiff, to prove that the attestation was in fact under the hand and seal of the said grand judge, produced and read in evidence a deposition sworn in open court, and admitted in evidence by consent of parties, so far as parol evidence is competent to prove the matters for which the deposition was so offered in evidence, which deposition is annexed to the exemplification, and is in the following words: "Personally appeared in open court, *Antoine Baudouin*, of lawful age, who being duly sworn, on his oath did say, that he is well acquainted with *Le Camus*, of *Saint Pierre*, in the Island of *Martinique*, whose signature is affixed to the paper hereto subjoined; and also with *Le Fessier*, *de grand pres*, of the said island, whose signature is also affixed to the said paper, and is well acquainted with the hand-writing and signature of the said *Le Camus* and *Le Fessier*, *grand pres*, having seen them respectively write; and that the name *Le Camus* is the proper hand-writing and signature of the said *Le Camus*, and that the name *Le Fessier*, *grand pres*, is the proper hand-writing and signature of the said *Le Fessier*, *grand pres*. And further, that he is acquainted with the seal of office of the Grand Judge of the Island and Colony of *Martinique*, and that the seal affixed to the said paper, and purporting to be affixed by the Grand Judge, is the official seal; and that the said *Le Fessier*, *grand pres*, is now, and was, on the 13th of Germinal, in the 12th year of the *French* Republic, Grand Judge of the Island and Colony of *Martinique* ;and that he the deponent being a *French* citizen, and a resident of the said Island of *Martinique*, he is well acquainted with the laws and constitution thereof, as far as relates to the powers and functions of the Grand Judge, Military Commander and Prefect; and that the Grand Judge is, by the said constitution and government, the supreme authority and chief of the government, as to all that relates to judicial papers and proceedings, and is the sole authority by the said laws and government whereby any judicial proceedings can be authenticated. And

1807.

De Sobry
vs
De Laistre

1807.

De Sobry
vs
De Laistre

that he, this deponent, is not a lawyer by profession, but a merchant, and derives his knowledge of the said constitution and government from the common practice of the place, the general understanding; and his general information as a *French* citizen, and an inhabitant of the said colony. The deponent further says, that there is not any general seal for the said colony; the Captain General having one for all affairs relating to the military department; the Prefect one for all matters relating to the finances and supplies which belong to his department; and the Grand Judge one for all matters relating to the judicial department; and that he derives this knowledge from his own experience and transactions, and from his general knowledge of the said colony and government." The defendant objected to the reading of the exemplification as evidence, because the same was not legally authenticated, and because it does not contain the whole proceedings, and is not a full record of the whole proceedings which was before, and which had taken place in, the Supreme Court of the Island of *Martinique.*

*Harper* and *Boyd*, for the Plaintiff, contended, 1. That in proving a foreign judgment, proof of the seal of the court, and hand-writing of the judge, was sufficient. They cited *Henry vs. Adey,* 3 *East,* 221. *Moises vs. Thornton,* 8 *T. R.* 303. *Church vs. Hubbart,* 2 *Cranch,* 238. *Peake's Evid.* 72, 73, *(notes,)* 49; and the act of 1785, ch. 46, s. 2. 2. That the record is full and complete according to the principles of the law of *England*—They cited *Peake's Evid.* 68. 5 *Bac. Ab.* tit. *Pleading,* 323; and 1 *Esp. N. P.* 6.

*Martin,* (Attorney General,) and *Purviance,* for the Defendant, cited *Peake's Evid.* 46, 47. 3 *Inst.* 173. *Gilb. L. E.* 17, 23. *Melan vs. The Duke of Fitzjames,* 1 *Bos. & Pull.* 141; and *Talleyrand vs. Boulanger,* 3 *Ves.* 448.

CHASE, Ch. J. The Court are satisfied upon the subject, and are of opinion that the mere showing the seal of a court of our own state in another court of the state, is sufficient authentication of the judgment of the court it purports to certify. But if it is a judgment of a foreign court, the seal of the court does not prove itself, but must be proved by testimony. The court are of opinion, that

1807.

De Sobry
vs
De Laistre

the testimony produced in this case is sufficient to prove the seal of office of the Grand Judge of the Island and Colony of *Martinique*. As to the record's not being full enough, the court are to presume that the record produced contains all the proceedings in the court of appeals, and that it is a full record; and the court are of opinion that it is proper to be given in evidence to the jury. Besides, it is to be observed, that this record is not the matter in issue in this cause, but comes in collaterally. It seems to the court, that as this is mere matter of inducement the same strictness is not necessary; but upon this point the court do not mean to give an opinion. In the case of *Henry vs. Adey*, 3 *East*, 221, it was debt upon the very record produced. The court, however, are of opinion, that this record is sufficiently authenticated, and ought to be read in evidence to the jury. The defendant excepted.

4. The counsel differed in their ideas of the manner in which they ought to proceed as to the proof of the *French* law.

*Martin* (Attorney General,) for the Defendant, contended, that when it is disputed as to what are the laws of a foreign country, evidence must be given to prove what are those laws; and if there is a different construction put upon them by the parties, the court is to decide which construction is to prevail.

Chase, Ch. J. seemed to concur in this idea of the attorney general, and said that the court are to decide what is proper evidence of the laws of a foreign country; and when evidence is given of those laws, the court are to judge of the applicability of such laws, when proved, to the case before the court.

5. The defendant offered to read to the jury certain letters written to him by *Dominique Pechier*, (and admitted to be in his hand-writing,) for the purpose of controverting the testimony of the said *Pechier*, as returned with one of the commissions which issued in this cause; but the plaintiff objected to the reading of those letters, because the testimony taken was under a commission obtained by the defendant, and he cannot invalidate his own testimony.

1807.

De Sobry
vs
De Laistre

CHASE, Ch. J. The letters being admitted to be in the hand-writing of Mr. *Pechier*, the witness, the court are of opinion they may be read to the jury, for one purpose alone; that is, to impeach the credit of the witness as to what he has sworn upon his examination under the commission, contradictory to the contents of the letters; but that the letters are not admitted as evidence to prove any particular fact, which may be contained therein.

6. The plaintiff then prayed the opinion of the court, and their direction to the jury, that a contract made in one country, with a view to the execution or performance of it in another, is governed in all things, both as to its essence and the mode of enforcing it, by the laws of the latter country.

CHASE, Ch. J. If the contract is in writing it will itself show where it is to be executed; but if it does not appear, by the face of it, the presumption is that it is to be executed in the country where it was made. If it does appear that it has a view to be executed in a particular country, it must be carried into effect pursuant to the laws of that country. But if the contract is by parol, the party is at liberty to go into evidence to prove the intention of the parties as to where it was to be executed.

7. *The second bill of exceptions.* The plaintiff prayed the opinion of the court, and their direction to the jury, that if they are of opinion, from the evidence before them, that the testator of the defendant was, on the 1st of April and the 30th of September 1797, indebted to the plaintiff in the several sums stated in his account filed in this action, or any part thereof, and that the plaintiff at those several times resided within the *U. S*, and was known by the testator so to reside; and that he, on the two first above mentioned days, acknowledged the debts, or any part of them, and directed them, or any part of them, to be paid out of his estate after his death, and on the last mentioned day directed, in and by his will of that day, that all debts in the *U. S*. should be paid out of his property in the *U. S*. bequeathed to the defendant, then the plaintiff is entitled to recover the said sums, or such part thereof as were so acknowledged and directed to be paid, or the value thereof, in current money of this state.

*Harper* and *Boyd*, for the Plaintiff, cited *Thorn vs. Watkins*, 2 Ves. 36, 37.

*Martin*, (Attorney General,) for the Defendant, also cited *Thorn vs. Watkins. Bruce vs. Bruce*, 2 *Bos. & Pull.* 229, (notes;) and *Sinclair vs. Monsieur de France*, Ibid 363.

CHASE, Ch. J. The court cannot give the direction prayed for by the counsel for the plaintiff. The court are of opinion, that the facts stated, and the acknowledgments, cannot change the nature of the contracts made between the plaintiff and the testator in *Martinique*, or prevent the construing the same according to the laws of *France*, so far as the same may be applicable to the contracts. If the contracts, by which the debt becomes due, were made in *France*, they must be governed by the laws of *France*. No acknowledgment of the debt due in this country can change the original nature of it. The great question depends upon what are the laws of *France*. If the plaintiff can establish his claim, according to the laws of *France*, no act of the testator can prevent his recovering it in this country. The plaintiff excepted.

8. *The third bill of exceptions.* The defendant further offered in evidence, that the 34,925 livres and 14 sols, alleged to have been received by the testator in *France*, and invested in goods, and shipped as before mentioned, which goods were by the testator disposed of in the *U. S.* for his use, were part of the sum of 40,000 livres, advanced by the plaintiff to the testator in May and August 1793, and by the testator received from Madam *Aubin Blampre*, and which are charged in the account exhibited in this cause, and constitute the two articles of 12,000 livres and 28,000 livres in that account, which are therein charged as received by the testator for the use of the plaintiff, and on which he has charged an interest from the times he states the sums to have been respectively received by the testator; and therefore, that the plaintiff had elected to consider the whole of the 40,000 livres as money due to him from his father, from the respective times he received it; and that the plaintiff did, on the 9th day of June 1803, file the following account in this cause, as specifying the claims

1807.

De Sobry
vs
De Laistre

which he had against the defendant as executor of the testator, for which he had brought his suit, to wit:

"*Benjamin De Sobry*, Executor of *Michael A. Terrier de Laistre*, deceased,

To <i>Lewis A. Terrier de Laistre</i>,    D<sub>r.</sub>

| | Currency. | Dolls. |
|---|---|---|
| 1792, Decr. 29. To 1236 livres, money of the Islands, being the price of 4 slaves sold and delivered to the testator on my departure from Martinico to France, as by his written acknowledgment, dated 30th Nov. 1795, equal to | £561 16 4 | $1498 18 |
| Interest thereon from this day till 21st May 1803, at 5 p. ct. | 291 15 10 | 778 12 |
| 1793, May 21. To 12,000 livres tournois, received by said testator this day for my use, as per his letter of this date, equal to | 857 5 0 | 2285 75 |
| Interest thereon from this day till 20th May 1803, at 5 p. ct. | 428 12 6 | 1142 87 |
| Aug. 1. To 28,000 livres tournois, received by said testator for my use this day, as per his letter of this date, equal to | 2000. | 5333 33 |
| Interest thereon at 5 p. ct. till 20th May 1803, | 980 9 8 | 2614 64 |
| 1795, May 22. To 3440 livres tournois, received by said testator this day for my use, as per his two letters, one of this date, and the other of the 15th October 1795, equal to | 245 14 3 | 655 23 |
| Interest thereon at 6 p. ct. till 20th May 1803, | 117 18 | 314 40 |
| | £5483 11 7 | $14622 52 |

The defendant then offered in evidence, that in consequence of this account so filed, the defendant had taken out the three last commissions which were executed, in order to examine into the justice of the claims in the account stated, and the operation of the *French* laws thereon; and he gave in evidence the commissions, the returns thereof, and the evidence obtained thereon, and prayed that the court would not permit the plaintiff to change the nature of his claim contrary to his own election deliberately made,

and contrary to his claims as exhibited by him to the defendant in his said account. The plaintiff also prayed the court, and their direction to the jury, that if the jury should be of opinion, from the evidence before them, that 34,925 livres and 14 sols, were, on or before the 29th of December 1793, received in *France* from the plaintiff, and to his use, by the testator, and were, on or about that day, invested by him in merchandises at *Bourdeaux*, in *France*, for the account and risk of the plaintiff; and that the merchandises were then and there, by the testator, shipped to the *U. S.* for the account and risk of the plaintiff, and that the merchandise did arrive in the *U. S.* some time in or before the month of May 1795, and were then and there received by the testator into his possession, and sold and disposed of for his own use and benefit, and the price thereof paid to the testator in his life-time, then the plaintiff is entitled to recover the amount of money which the jury, from the evidence, shall believe that the testator received for the merchandise.

CHASE, Ch. J. The court cannot give the direction to the jury as prayed by the plaintiff. The court are of opinion, that the plaintiff is precluded, by his account filed, from going into evidence to establish his claim for the money had and received by the testator for his use, in a manner different from that in which he has elected, by his account, containing a notice of his claim, to consider the testator his debtor for his use. The plaintiff excepted.

9. *The fourth bill of exceptions.* The defendant then prayed the opinion of the court, and their direction to the jury, that if the sum remaining in the defendant's hands, and retained by him as a legacy, or any part thereof, is liable to be recovered from him, as a part of the succession of the testator, and to be made answerable for such debts of the testator as were contracted under the *French* laws, which have their force and effect according to the provisions of those laws, and which are to be paid out of the succession. according to the rules and regulations thereby established, the suit could only be prosecuted against him by and in the name of the plaintiff and his brother, if they have both jointly taken upon themselves the management and administration of the succession, or in the name of his brother, *Marc Anthony*, alone, if he has alone taken upon

himself the administration and management, and not in the name of the plaintiff alone, as the suit is now brought.

CHASE, Ch. J. The court are of opinion, that any creditor may sue the executor *pro forma*, as he is called here, provided he shows himself to be a creditor under the laws of the country where the contract was entered into. That as long as assets remain in the hands of the executor *pro forma*, he is answerable to the creditors; and if there is any surplus, it is to go into the mass of the succession, there to be distributed according to the laws of succession of the country where the person is domiciled.

The court are of opinion, that personal property adheres to the person; that wherever the person is domiciled, the property goes in distribution, according to the laws of that country. Whatever fund in this country is answerable for debts, is answerable to all creditors alike, (provided they show themselves to be creditors,) according to the laws of this country.

If our laws give a preference to our citizens, the defendant should have pleaded that our citizens had that preference.

The plaintiff is to be considered as a creditor, and in no other capacity; and if he has not intermeddled, so as to prevent his recovery as such under the *French* laws, he must recover in this action.

The court are of opinion, that if the jury should find, from the evidence, that the plaintiff, as heir pure and simple, or as beneficiary heir, has not intermeddled with the estate or succession of the testator, and that the testator was indebted to the plaintiff, at the time of his death, that then the plaintiff has a right to support this suit. But the court do not mean to decide, that an intermeddling by the plaintiff in the quality of heir pure and simple, or as heir with benefit of inventory, would defeat his right of recovery in this action, that question being still open.

The court are of opinion, that the assets in the hands of the defendant, as executor of the testator, are liable to the payment of debts due to the citizens of *France* from the testator, contracted there, or in the colonies of *France*, and that the defendant will be only accountable to the testamentary executor, the heir pure and simple, or heir with benefit of inventory, for the surplus remaining, after

payment of debts, which surplus is distributable according to the laws of *France.*   The defendant excepted.

10.  *The fifth bill of exceptions.*   The defendant further offered in evidence,  that the testator being  a *French* citizen, and having his  domicil in  the Island  of *Martinique,* died there, having first duly made  the wills and  codicils herein before mentioned and set forth,  and that at the time of his death he was possessed of certain  property  in the *U. S.* and had certain debts due  to him  therein; that *Pechier,* in that Island, as testamentary executor, took upon himself  the management and administration  of the succession of  the testator,  according to the *French* laws; that the succession, according to the laws of *France,*  is the whole mass of his estate, real, personal, mixed, rights and claims, whatsoever and wheresoever,   of which the deceased  was seized or possessed, or to which he had right or title at the time of his death, and which, by the *French* laws, were answerable in the first place for payment  of debts,  and then of legacies, and after the payment of debts and legacies, the residue to be enjoyed by  the heir  of the  deceased,  if he had only one child,  or if more  than one,  to be divided equally between them.   That by the said law all the children constitute but one heir,  and are equally  entitled  to the residue, where there is a residue.   That *Pechier,*  by taking upon himself  the management and administration of the succession, was the person whose  duty  it was to take into his possession, and to collect,  receive and obtain, the whole of the  succession,  and  to pay and satisfy thereout all debts due from and claims against  the succession; and afterwards to deliver over the residue  to  the heirs  of the testator,  unless the heirs, or some  one  of them,  chose  to take the administration and management of the succession out of the hands of *Pechier.*   That by the *French* laws the heir or heirs, or either of them, have an exclusive right, in the first instance, to  take upon themselves the management and administration of the succession, and if they do not, and the testamentary executor acts,  yet they may, whenever they please, interpose and take upon themselves the management and administration of the succession. That the testator left two sons,  his heirs,  both of whom are now living, the plaintiff,  and his brother named *Marc Anthony Terrier de Laistre,* and that they, sometime in the

month of July in the year 1798, did take upon themselves, in the Island of *Martinique,* the management and administration of the succession; and that *Pechier* did then and there deliver up to them the succession as far as it had come to his hands; and thereupon it became the duty of the plaintiff, and his brother, to take into their possession the whole of the succession, and collect and obtain the debts, &c. constituting part of the same, and thereout to pay all debts and legacies. That the debts and claims for which this action is brought, were contracted and arose in the government of *France,* and are subject to the operation of the *French* laws, and payable out of the succession according to those laws, and in such manner as is by those laws provided: That he, the defendant, according to the wills and codicils, and with the assent of *Pechier,* while he had the management and administration of the succession, obtained letters of administration in due form of law, in this state, to collect the debts and other effects, which were in the *U. S.* and which constituted part of the succession, in order to pay thereout the debts by the will charged thereon, and to hold the residue agreeable to the dispositions of the testator, and the *French* laws operating thereon. That the sum remaining in his hands, after payment of the debts, is retained by him, he claiming the same as a legacy given him by the testator. That no creditor of the succession, or other person, can, by the *French* laws, bring suit against, or have any claim against a legatee, who hath obtained his legacy for which he can prosecute any suit, unless the succession is insolvent; and that the insolvency must be established by judiciary proceedings in a *French* court, of competent jurisdiction; and that there was no evidence given by the plaintiff of such proceedings having been had. The plaintiff further offered in evidence, that by the laws of *France,* and her colonies, a co-heir of a person deceased, with benefit of inventory, who is also a creditor of the deceased, preserves in all cases his rights as a creditor, and may recover his debt out of the estate of the deceased wherever he can find it, without prejudice to his rights as a co-heir; and that the plaintiff in this action never did act as co-heir of the estate of the testator, nor in any manner intermeddle with his estate. The plaintiff then, upon the whole statement in this case, prayed the opinion of the court, and their di-

1807.

De Sobry
vs
De Faistre

rection to the jury, that if the jury should be of opinion, from the evidence before them, that the testator did purchase from the plaintiff, in the Island of *Martinique*, sometime in or before the year 1793, four slaves, the property of the plaintiff, and did also receive from the plaintiff, on loan, at *Bourdeaux*, in *France*, on or about the 21st of May 1793, the sum of 12,000 livres, current money of *France*, and on or about the 1st of August 1793, the further sum of 28,000 livres like money, and on or about the 22d of May 1795, the sum of $170 current money of the *U. S.* to be employed for the benefit of the testator, and accounted for with, or repaid to the plaintiff; and that the testator, at the time of his death, was possessed of personal property in this state, and elsewhere within the *U. S.* to the amount of $13,092 68, and bequeathed the same to the defendant by his will, bearing date at *Martinique*, on the 14th of April 1797; and that the defendant duly proved the said will in the orphans court of *Baltimore* county, in this state, and obtained from that court letters testamentary on the will, and took upon himself the burden and execution thereof, and received into his possession, as executor, the personal property of the testator, then the plaintiff is entitled to recover, as well the value of the slaves, as the several sums of money received by the testator, provided there be assets sufficient to pay the same, and if not, then so *pro rata.*

*Harper* and *Boyd*, for the Plaintiff, cited *The Dutch West India Company vs. Van Moses*, 1 *Stra.* 612. 2 *Huberus*, B. 1, tit. 3 p. 26, cited in *Emory vs Greenough*, 3 *Dall. Rep.* 370, (note.) *Melan vs. The Duke of Fitzjames*, 1 *Bos. & Pull.* 142. *Robison vs. Bland*, 2 *Burr.* 1077, 1078, 1083. *Imlay vs. Ellefsen*, 2 *East*, 455. *Negro Hector vs. De Kerlegand*, 3 *Harr. & M'Hen.* 185. *Wright vs. Nutt*, 1 *H. Blk. Rep.* 152. *Folliott vs. Ogden*, *Ibid* 123. S. C. 3 *T. R.* 734. 3 *Bac. Ab.* 30. *Hunter vs. Potts*, 4 *T. R.* 182, 183, 184, 185. *Pigott vs. Mason*, in Court of Chan. *Sinclair vs. Monsieur de France*, 2 *Bos. & Pull.* 364, (note.) *Mostyn vs. Fabrigas*, 1 *Cowp.* 174. *Dixon's Ex'rs. vs. Ramsay's Ex'rs.* 3 *Cranch*, 324. *Talleyrand vs. Boulanger*, 3 *Ves.* 448. *Thorn vs. Watkins*, 2 *Ves.* 36. 2 *Fonbl.* 442; and *Donat*, 349.

1807.

De Sobry
vs
De Laistre

*Martin*, (Attorney General,) for the Defendant, cited *Harper vs. Hampton*, 1 *Harr. & Johns.* 453.   2 *Huberus*, B. 1, tit. 3, *p.* 36.   *Cumming vs. The State*, 1 *Harr. & Johns.* 340.   *Melan vs. The Duke of Fitzjames*, 1 *Bos. & Pull.* 142.   *Talleyrand vs. Bounlanger*, 3 *Ves.* 441; and *Vatell*, B. 2, *ch.* 8, *.s.* 110, 111.

CHASE, Ch. J. delivered the opinion of the court.   The court are of opinion, that it is a general principle, which admits of a few exceptions, that in, construing contracts made in foreign countries, the courts are governed by the *lex loci* as to what respects the essence of the contract; that is, the rights acquired, and the obligations created by it.   That the remedy or mode of enforcing the contract, is to be conformable to the laws of the country where the action is instituted,   *Dixon's ex'rs. vs. Ramsay's ex'rs.* 3 *Cranch*, 323, 324.

The exceptions to construing contracts according to the *lex loci*, which at present occur, are

*First.*   Where by the terms of the contract it is to be executed in another country: there the parties to it, by common consent, adopt the laws of that country as the rule of decision.

*Secondly.*   Where the contract is contra bonos mores, as for the price of prostitution—Such a contract, though legal in some countries, would not be enforced in *England*, or in this state.

The court are also of opinion, that unless the jury should be satisfied, according to the laws of *France*, that a co-heir with benefit of inventory, who is also a creditor, cannot recover in the quality of creditor, without renouncing, that then the plaintiff is entitled to recover whatever the jury may find due on the contracts made in *France*, *according to the laws of France.*

The court are also of opinion, that as to that part of the sum which is claimed under the contract made in *America*, the plaintiff is entitled to recover, without any regard to the laws of *France*, whatever the jury may find due thereby.

The court are also of opinion, that upon principles of common sense and justice, no part of the testator's estate is subject to distribution among his co-heirs, but the surplus or residuum which may remain after payment of all

the debts and legacies; and that a debt due to one of the co-heirs is as much entitled, on principles of justice, to payment, as a debt due to a stranger; and that it is incumbent on the defendant to prove to the jury that there is a law of *France* which extinguishes the right or claim of the co-heir creditor, with benefit of inventory, unless he renounces as co-heir.

*(a)* The court are also of opinion, that the laws of *France* are matters of fact to be found by the jury, upon evidence to be produced to them; and, unless the jury find some law of *France*, which extinguishes the claim or right of recovery of the plaintiff, that the plaintiff has a right to recover in this case, whatever the jury may find to be due to him upon a full investigation of the evidence. The court also inform the jury, that it does not appear to the court that there is any law of *France* which is a legal impediment to the the plaintiff's recovery. The defendant excepted.

*Harper*, for the Plaintiff, before the jury, upon the laws of *France*, cited 1 *Domat*, 346, 347, 348, 349; & 2 *Coutume de Paris*, 252, 299, 302.

*Martin*, (Attorney General,) and *Purviance*, for the Defendant, also before the jury, referred to the testimony taken under the several commissions issued in this cause. 2 *Pothier*, 116. 1 *Poth.* 77. 2 *Coutume de Paris*, art. 300, 301, 252, 302, 303, 304, 307, 309, 317, 318, 344, and the commentary of *Ferriere* on those articles. *Serres*, 304, 305, 400, 311, 312, 363, 309, 351, 393, 421, 315, 322, 323, 314, 308, 262. *Ordinance of Lewis* XIV, art. 1, 4. 1 *Coutume de Paris*, art. 179. 13 *Vin. Ab.* 50, 414. *Peake's Evid.* 48; and *Collet vs. Keath*, 2 *East*, 260.

Verdict and judgment for the plaintiff, and the defendant brought a writ of error to this court.

The cause was argued before TILGHMAN, BUCHANAN, NICHOLSON and GANTT, J. by

*Winder*, for the plaintiff in error, and by

*Harper* and *Boyd*, for the defendant in error.

*(a)* This part of the court's opinion was given by them after the argument of all the points of law in the cause, and while the attorney general was addressing the jury.

1807.
Hollingsworth
vs
M'Donald

THE COURT concurred in the opinions of the General Court, in the *first, fourth,* and *fifth* bills of exceptions, taken by the defendant in that court.

JUDGMENT AFFIRMED.

---

DECEMBER.

## HOLLINGSWORTH, *et ux. vs.* M'DONALD, *et. al.*

The *habendum* of a conveyance in trust, after vesting a life-estate in R P, uses the following expressions: "And from and after her decease, that T P, and his heirs, forever, shall have and possess the said land and premises; and in case of his death, without lawful issue, the said lands shall revert to, and be vested in, the said R P, and her heirs, for ever"—*Held,* that T P took a fee tail, with a reversion in fee to R P.

In a conveyance of a freehold or legal estate, technical words are appropriated by law to the creation, or limitation of particular estates; for instance, to create an estate in fee the limitation must be

APPEAL from a decree of the court of chancery *dismissing* the bill of complaint. The material facts were these —The complainant *Rachel,* (one of the appellants,) whilst she was sole, on the 21st of September 1790, was seized in fee of the tracts of land called *Rich Neck* and *Howard's Timber Neck.* A marriage settlement took place between the complainants, on the 21st of September 1790, and *Lyde Goodwin* was appointed trustee. This settlement was as follows: "This indenture, made the 21st of September 1790, between *Jesse Hollingsworth,* of the first part, *Rachel Lyde Parkin,* of the second part, and *Lyde Goodwin,* of the third part;" and after reciting the intended marriage between the said *Jesse* and *Rachel,* stated, that the said *Jesse* granted, &c. to the said *Lyde,* and the said *Rachel,* with the consent and approbation of the said *Jesse,* granted &c. to the said *Lyde,* his heirs and assigns, all those tracts of land called *Rich Neck* and *Howard's Timber Neck,*

to J S, and his heirs, and to create a fee tail, to J S, and the heirs of his body. The words *de corpore suo,* are indispensably necessary, but may be supplied by words to the same effect, plainly designating or pointing out the body from whom the heirs inheritable are to issue or descend.

Whether the court can, and how far they are at liberty, in expounding a deed of conveyance, creating or limiting a use or trust at common law, and not united to the possession by the statute of uses, to reject the rules established by the common law, in the construction of a conveyance of a freehold estate, and to give an exposition according to the intention of the parties as in a will?

Whether a trust estate, or any but a legal estate can pass by a deed of bargain and sale?

Whether a *feme covert* can pass her real estate in any other way than by a deed of bargain and sale?

Whether a trust estate is answerable to the creditors of *cestui que trust?*

A *feme covert* cannot transfer or pass her interest in land to another, unless by fine, common recovery or deed executed and acknowledged according to the mode prescribed by the act of 1715, ch 47.

The acknowledgment of a deed by a *feme covert* grantor, held to be defective, the word "*fear*" being mitted in the certificate of the acknowledgment, and no word of similar import or meaning substitute in its place; but held to be cured by the act of 1807, ch. 52.

A besol adherence to the form of such certificate is not essentially requisite; and the omission of words deemed essential can be supplied by the substitution of words equipollent, or of similar import and signification.

A decree of the chancellor is subject to his controul, only upon a bill of review, or a bill in the nature of a bill of review.

A bill of review lies after the decree is signed and enrolled

A bill in the nature of a bill of review lies after the decree is made, but before enrolment.

A decree must be considered as enrolled after it is signed by the chancellor and filed by the register.

A bill of review will only lie for two causes: Error apparent on the decree, or for some matter relevant, existing at the time of the decree, and discovered since.

A bill of review cannot be supported for matter existing at the time of the decree and discovered since, without affidavit of such matter, and the existence of it at the time of the decree, to lay a foundation for applying to the chancellor for his leave to file a bill of revi w, and obtaining such leave.

On petition suggesting prop r matter supported by affidavit as the ground for filing a bill of review, the chancellor exercises his judgm nt on the propriety of int rfering or meddling with his decree for the cause disc osed, and grants or rejects the application accordingly.

As to the distinction between trusts executed and executory.